

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

KCB:ANR
F. #2015R00270

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

July 7, 2025

<u>By ECF and Email</u>

The Honorable Kiyo A. Matsumoto
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:   United States v. Michael Praino
           <u>Criminal Docket No. 22-405 (KAM)</u>

Dear Judge Matsumoto:

      The government respectfully submits this letter in advance of sentencing in the above-captioned case, which is scheduled for July 15, 2025 at 12:00 p.m. For the reasons set forth below, the government submits that a sentence within the applicable United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") range of 10 months' imprisonment would be sufficient, but not greater than necessary, to achieve the goals of sentencing set forth in 18 U.S.C. § 3553(a).

I.      <u>Background</u>

     A.  <u>The Offense Conduct</u>

      This case arises from the defendant's participation in an illegal sports gambling business (the "Gambling Business") operated by him and his co-defendants, including Luchese organized crime family captain Anthony Villani. (*See* Presentence Investigation Report ("PSR") ¶¶ 1, 20.) Villani was the owner and principal of the Gambling Business. (*Id.* ¶ 21.) The Gambling Business's primary purpose was to generate revenue for Villani and the Luchese crime family. The Gambling Business operated through a website and when a new bettor joined, the bettor received login information, and their account was linked to a "bookmaker" who was responsible for paying and collecting their sports bets. Bets were then placed electronically on the website, but payments occurred in person through bookmakers. (*Id.*) Bookmakers were responsible for taking bets from a group of bettors, collecting and paying individual bettors, and settling with Villani. (*Id.* ¶ 22.)

The defendant served as a bookmaker for the Gambling Business, using the aliases "Platinum" and "A700DJ." (*Id.* ¶¶ 20-21, 47.) The financial aspects of the Gambling Business involved only cash. (*Id.* ¶ 21.) Between 2004 and 2020, the Gambling Business generated approximately $35 million in revenue. (*Id.*) Based on the investigation, the defendant personally profited at least $225,000 from his work as a bookmaker for the Gambling Business.

B. The Defendant's Criminal History

On April 27, 1996, the defendant was arrested for driving while intoxicated. The defendant was fined $350, and his driver's license was revoked. (*Id.* ¶ 79.)

In January 1997, the defendant participated in two robberies, one of which involved gunfire. (*Id.* ¶ 80.) For this conduct, the defendant pleaded guilty to attempted robbery in the second degree and was sentenced to five years of probation. (*Id.* ¶¶ 80, 81.)

On April 8, 1998, the defendant was again arrested and cited for driving while intoxicated. He was fined $300, and his driver's license was suspended for 90 days. (*Id.* ¶ 82.) On September 5, 1999, the defendant was arrested and convicted of criminal impersonation. (*Id.* ¶ 83.)

On August 11, 2006, the defendant was arrested for driving while intoxicated, which resulted in a car accident. (*Id.* ¶ 84.) On October 27, 2006, the defendant was arrested for driving while intoxicated and possession of a weapon in the fourth degree. The arresting officers observed the defendant tailgating other cars, swerving erratically, and speeding along a highway. For both of these incidents, the defendant was fined $1,000, his driver's license was revoked, and he was sentenced to a year in custody. (*Id.* ¶ 85.)

C. Guidelines Calculation

The government agrees with the Probation Department's calculation of the Guidelines Offense Level, which is consistent with the defendant's plea agreement, as follows:

| | |
|---|---|
| Base Offense Level (U.S.S.G. § 2E3.1(a)(2)(A)) | 12 |
| Less: Acceptance of Responsibility (U.S.S.G. § 3E1.1(a)) | -2 |
| Less: Global Resolution (U.S.S.G. § 5K2.0) | -2 |
| Total | <u>8</u> |

(PSR ¶¶ 46-47, 66-77, 127.) The government agrees with the Probation Department's calculation of the defendant's Criminal History Category as Category IV, yielding a Guidelines range of 10 to 16 months' imprisonment. (*Id.* ¶ 115.) This differs from the

government's calculation of the defendant's Criminal History Category as Category III in the plea agreement, which resulted in a Guidelines range of 6 to 12 months' imprisonment.

II.    Applicable Law

The Supreme Court has explained that the Court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007) (citation omitted). Next, a sentencing court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, [it] may not presume that the Guidelines range is reasonable. [It] must make an individualized assessment based on the facts presented." *Id.* at 50 (citation and footnote omitted). "When a factor is already included in the calculation of the [G]uidelines sentencing range, a judge who wishes to rely on that same factor to impose a sentence above or below the range must articulate specifically the reasons that this particular defendant's situation is different from the ordinary situation covered by the [G]uidelines calculation." *United States v. Sindima*, 488 F.3d 81, 87 (2d Cir. 2007) (quotation omitted, alterations in original). "[W]here the sentence is outside an advisory Guidelines range, the court must also state 'the specific reason' for the sentence imposed, in open court as well as in writing – 'with specificity in a statement of reasons form' that is part of the judgment." *United States v. Aldeen*, 792 F.3d 247, 251-252 (2d Cir. 2015), *as amended* (July 22, 2015) (quoting 18 U.S.C. § 3533(c)(2)).

Title 18, United States Code, Section 3553(a) provides, in part, that in imposing sentence, the Court shall consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; [and]
>
> (2) the need for the sentence imposed--
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct; [and]
>>
>> (C) to protect the public from further crimes of the defendant.

Section 3553 also recognizes the need to afford the defendant opportunities for rehabilitation. *See* 18 U.S.C. § 3553(a)(2)(D).

At sentencing, "the court is virtually unfettered with respect to the information it may consider." *United States v. Alexander*, 860 F.2d 508, 513 (2d Cir. 1988). Indeed, 18 U.S.C. § 3661 expressly provides that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which

3

a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."

Thus, the Court must first calculate the correct Guidelines range, and then apply the 3553(a) factors to arrive at an appropriate sentence. The district court must also "remain cognizant of them throughout the sentencing process." *Gall*, 552 U.S. at 50 n.6. To the extent there remain any open issues as to the correct Guidelines range, the Court should first make any necessary finding to arrive at the correct range. Nevertheless, however the Court arrives at the correct Guidelines range, it still must fashion a sentence that meets the criteria of Section 3553(a) under the specific facts of this case.

III.    A Guidelines Sentence of 10 Months' Imprisonment Is Warranted

The government respectfully requests that the Court impose a sentence within the applicable Guidelines range and the Guidelines range calculated in the plea agreement of 10 months' imprisonment. Such a sentence would be sufficient, but not greater than necessary, to reflect the seriousness of the defendant's offense, promote respect for the law, provide just punishment, afford general and specific deterrence, and achieve the other purposes of sentencing.

The defendant participated in the operation of the Gambling Business for over 15 years, from 2004 to 2020. (PSR ¶ 1.) The defendant was integral to the operation of the Gambling Business; he took bets, handled collection and payment, and settled accounts with his co-defendant Villani, a captain in the Luchese organized crime family. (*Id.* ¶¶ 20-22.) The defendant's actions directly contributed to the Gambling Business' long-term success and profitability, which benefited the defendant personally in the amount of at least $225,000 and which also benefited the Luchese organized crime family.

Equally important is the fact that the defendant is not a first-time offender. The defendant has prior convictions for attempted robbery in the second degree, criminal impersonation, criminal possession of a weapon, and repeatedly driving while intoxicated. (*Id.* ¶¶ 79-85.) As previously noted, the defendant was serving a sentence for his 1997 conviction at the time of his arrest for the instant offense. (*Id.* ¶ 87.) The defendant's multiple convictions underscore his blatant disregard for the law and the ineffectiveness of prior terms of incarceration. Given the defendant's involvement in the Gambling Business and his criminal record, a Guidelines sentence of 10 months' imprisonment is necessary. A sentence of this length would hold the defendant accountable while sending a clear message that repeated criminal conduct will not be tolerated. Such a sentence would also protect the public from a defendant who continues to commit serious crimes.

Although the government recognizes the defendant's role as a father, particularly one who shares joint custody of his child, such family circumstances are not typically considered "extraordinary" by the courts to warrant a lenient sentence. Def. Mem. at 2, 4; *United States v. Johnson*, 964 F.2d 124, 129 (2d Cir.1992). Rather, such a role

4

presents "ordinary family responsibilities" that the United States Sentencing Commission took into account when creating the Guidelines, a point reflected in U.S.S.G. § 5H1.6. *Johnson*, 964 F.2d at 128. Historically, such extraordinary situations have been those "where the family was uniquely dependant on the defendant's ability to maintain existing financial and emotional commitments." *United States v. Sprei*, 145 F.3d 528, 535 (2d Cir. 1998); *see also United States v. Faria*, 161 F.3d 761, 763 (2d Cir. 1998) (denoting that "[t]he financial and emotional consequences of [] [defendant's] incarceration are no greater than those faced by most criminal defendants who have a family"). Where another member of the family can assume the defendant's caregiving responsibilities, a defendant's request for a more lenient sentence has been denied. *United States v. White*, 301 F. Supp. 2d 289, 294-95 (S.D.N.Y. 2004). Here, given the defendant's shared custody arrangement, others can feasibly assume his parental responsibilities during his imprisonment. What is more, the consequences of the defendant's criminal conduct on his son were entirely foreseeable to him. Thus, the defendant's status as a father fails to justify a non-incarceratory sentence because his family circumstances are not extraordinary. *See Johnson*, 964 F.2d at 128 ("Disruption of the defendant's life, and the concomitant difficulties for those who depend on the defendant, are inherent in the punishment of incarceration.").

IV.    Conclusion

For the foregoing reasons, the government respectfully requests that the Court impose a Guidelines sentence of 10 months' imprisonment.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By:    ___/s/_____
Antoinette N. Rangel
Assistant U.S. Attorney
(718) 254-7481

cc:    Kevin B. Faga, Esq. (by E-mail and ECF)
United States Probation (by ECF)

5